# In the United States Court of Federal Claims

No. 05-397C

(Filed: June 16, 2011)

| | | |
|---|---|---|
| ****************************************** | * | |
| | * | |
| | * | |
| ROBERT A. DUBSKY, | * | |
| | * | |
| | * | Military Pay Case; Six-year |
| Plaintiff, | * | Statute of Limitations; 28 U.S.C. |
| | * | § 2501; Accrual of Cause of |
| v. | * | Action; Effect of Proceedings |
| | * | Before Air Force Board for |
| THE UNITED STATES, | * | Correction of Military Records. |
| | * | |
| Defendant. | * | |
| | * | |
| ****************************************** | * | |

*Edward A. Zimmerman*, Military and Veterans National Law Center, Burnsville, Minnesota, for Plaintiff.

*Douglas K. Mickle*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., *Captain John S. Goehring*, Department of the Air Force, Of Counsel, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

In this military pay case, Plaintiff Robert A. Dubsky, a Colonel in the United States Air Force Reserve, requests the Court to award him back pay for periods of active duty service in which he did not serve, but in which he allegedly would have served if the military had promulgated proper orders. Specifically, Colonel Dubsky alleges three distinct time periods in which the Air Force failed to place him on active duty as required by law. First, he claims that he was improperly released from active duty during weekends on 94 occasions from February 1991 through July 1998. Second, he asserts that he was improperly released from active duty from January 31, 1996 until September 26, 1997, while he was recovering from thyroid surgery. Third, he states that he was

improperly released from active duty from February 15, 1999 until October 5, 1999, while he was recovering from a wrist injury.

Colonel Dubsky did not serve on active duty orders after February 15, 1999 and he retired from the United States Air Force Reserve on October 28, 1999. Colonel Dubsky filed his complaint in this Court on March 24, 2005. Pursuant to 28 U.S.C. § 2501, a six-year statute of limitations applies to every claim in which the Court of Federal Claims has jurisdiction. For statute of limitations purposes, a cause of action for back pay accrues on the date of discharge. Colonel Dubsky was discharged from active duty for the final time on February 15, 1999, more than six years before filing his complaint in this Court. Accordingly, the Court lacks jurisdiction of Colonel Dubsky's claims and Defendant's motion to dismiss must be granted.

Background

Colonel Dubsky joined the Air Force in 1969 and was progressively promoted to the rank of Colonel. Colonel Dubsky moved from active duty to the Air Force Reserve in 1981. Administrative Record ("AR") 32. From 1991 through February 1999, Colonel Dubsky was placed on a series of non-continuous active duty orders for duties at Kelly Air Force Base in San Antonio, Texas. (AR 30.) Colonel Dubsky argues that these incremental orders, which took him off active duty for weekends, holidays, and other non-working days, were improper. In total, Colonel Dubsky asserts that there were illegal breaks in his orders on 94 occasions between February 1991 and July 1998, and that he should be awarded 185 days of extra service credit.

On January 22, 1996, Colonel Dubsky began a tour of active duty at Kelly Air Force Base. Shortly after beginning this tour of duty, Colonel Dubsky visited an Air Force medical treatment clinic to report symptoms that he stated had started one and one-half months earlier. (AR 778.) On January 30, 1996, while serving on active duty, Colonel Dubsky was diagnosed with Graves disease, and underwent thyroid surgery on January 31, 1996. (AR 586, 779.) On April 19, 1996, the Air Force conducted a line of duty determination and concluded that Colonel Dubsky's thyroid condition occurred in the line of duty, but that the issue had been resolved.[1] Colonel Dubsky continued to be recalled to active and reserve duty by various duty orders.

Colonel Dubsky asserts, however, that at the time of the April 1996 line of duty determination, his hypothyroidism, which is distinct from hyperthyroidism, had not been resolved. According to Colonel Dubsky, his hypothyroidism did not stabilize until September 26, 1997, and the Air Force should have placed him on active duty by medical continuation orders until that time. Instead, Colonel Dubsky received piecemeal active

---

[1] A "line of duty" determination is a finding made after an investigation of a military member's illness, injury, disease, or death, and can have a substantial effect on government benefits.

duty orders between the date of his thyroid surgery on January 31, 1996, and the date that his condition was resolved.  During this 605-day period, Colonel Dubsky served on active duty orders for 261 days, as well as 23 days of paid inactive duty for training.  (AR 586-93.)  Accordingly, Colonel Dubsky believes this Court should award him 321 days of active duty credit because the Air Force improperly released him from active duty while his thyroid condition remained unresolved.

In 1985, while not on active duty, Colonel Dubsky suffered a right wrist injury, which he re-aggravated in 1992.  (AR 19.)  Colonel Dubsky reported for the first time that he was suffering from his wrist injury while receiving treatment for his thyroid condition in 1996, and sought treatment for his wrist injury in September 1998.  Id.  A line of duty determination concluded that Colonel Dubsky's injury in fact occurred in the line of duty because the wrist injury was aggravated in 1992 after being called to active duty.  (AR 263.)  Colonel Dubsky remained under active duty orders until February 15, 1999, at which point the Air Force deemed the Colonel's wrist injury to be resolved.

Colonel Dubsky asserts that his wrist remained injured until October 5, 1999, at which point no further treatment could have improved his wrist.  In support of this assertion, Colonel Dubsky notes that on February 2, 1999 he was prescribed with occupational therapy three times a week for twelve weeks.  (AR 780.)  Additionally, on July 6, 1999, a doctor recommended that Colonel Dubsky continue his strengthening exercises on his own.  Thus, Colonel Dubsky argues that he should have remained on active duty medical orders from February 15, 1999 through October 5, 1999, and therefore the Court should award him 233 additional days of active duty service.  Colonel Dubsky did not serve on any active duty orders after February 15, 1999, and retired from the United States Air Force Reserve on October 28, 1999.

Colonel Dubsky filed his original complaint in this Court on March 24, 2005.  At the time the complaint was filed, Colonel Dubsky's application to the Air Force Board for Correction of Military Records ("AFBCMR") was pending.  The Court granted Colonel Dubsky several stays to allow him to petition the AFBCMR to assess his claims.  On June 17, 2009, the AFBCMR denied Colonel Dubsky the requested relief.  On September 30, 2009, the United States filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that the complaint should be dismissed for failure to plead a money-mandating statute as required for this Court's jurisdiction.  Defendant's motion noted that should Colonel Dubsky file an amended complaint, the United States believed any remaining claims should be remanded to the AFBCMR for clarification.  On January 26, 2010, counsel for Colonel Dubsky responded to Defendant's motion, agreeing that he had overlooked pleading a money-mandating statute and moved to file an amended complaint. Colonel Dubsky filed an amended complaint on April 12, 2010, and a motion to remand on April 19, 2010.  The Court granted Plaintiff's motion to remand and the case returned to the AFBCMR for clarification of its ruling.

On August 20, 2010, the AFBCMR filed its remand decision with the Court. On September 21, 2010, Colonel Dubsky filed a response to the AFBCMR remand decision, stating that the decision was arbitrary and capricious and did not provide sufficient relief. The Court conducted a status conference on October 5, 2010, to discuss the next steps to be taken in these proceedings. The Court established a schedule that, among other things, required Colonel Dubsky to file a statement identifying the remaining unresolved allegations for the Court to decide. On November 19, 2010, Colonel Dubsky filed a statement of unresolved issues for resolution by the Court. In response, on January 7, 2011, Defendant filed its motion to dismiss or in the alternative motion for judgment on the administrative record currently pending before the Court. Colonel Dubsky filed his response on March 29, 2011, and Defendant filed its reply on April 28, 2011.

Standard of Review

Subject matter jurisdiction may be challenged at any time by the parties or *sua sponte* by the Court. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993). The Court will grant a motion to dismiss where the plaintiff fails to establish that the Court has subject matter jurisdiction by a preponderance of the evidence. See Leonardo v. United States, 55 Fed. Cl. 344, 346 (2003), *aff'd*, 163 F. App'x. 880 (Fed. Cir. 2006). In evaluating a motion to dismiss, the Court will construe the allegations in the complaint in the light most favorable to the pleader and draw all reasonable inferences in the complainant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

Discussion

As sovereign, the United States is immune from suit except to the extent it consents otherwise and any statutory waiver of sovereign immunity will be strictly construed. See Collins v. United States, 35 Fed. Cl. 620, 624 (1996). A waiver of sovereign immunity to permit a suit for money damages and confer jurisdiction upon a court must be explicit. Id. The jurisdiction of this Court is based upon the Tucker Act which confers upon this Court the authority to render judgment on "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department . . . ." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 397 (1976). Therefore, to demonstrate jurisdiction in this Court, Plaintiff must also show that his claim arises from a statute or constitutional provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Id. at 400 (quotations omitted).

Pursuant to 28 U.S.C. § 2501 (2006), "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed

within six years after such claim first accrues." 28 U.S.C. § 2501 sets an express limitation on the jurisdiction provided to this Court by the Tucker Act. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008). A claim accrues, for purposes of the Tucker Act, "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003). A military pay claim accrues, and the statute of limitations is triggered, on "the date on which the service member was denied the pay to which he claims entitlement." Id. at 1313. A plaintiff's use of permissive administrative remedies, such as an appeal to the AFBCMR, which is not a prerequisite to this Court's jurisdiction, does not toll the statute of limitations or create a separate cause of action for review of the administrative decision. Id. at 1304; see also Wright v. United States, 81 Fed. Cl. 369, 373 (2008) ("[I]t is a canon of military-pay jurisprudence that seeking permissive administrative review does not toll the statute of limitations in the Tucker Act."). If a service member does not file suit within the six-year limitation period prescribed by 28 U.S.C. § 2501, he "loses all rights to sue for the loss of pay stemming from the challenged discharge." Martinez, 333 F.3d at 1304.

The last date on which Colonel Dubsky served on active duty was February 15, 1999. Colonel Dubsky alleges he should have been kept on active duty after that date, but due to the improper actions of the Air Force, he was not. Accordingly, it was on this date that Colonel Dubsky's claim accrued and on this date when the statute of limitations for his claim began to run.[2] However, Colonel Dubsky did not file his complaint in this Court until March 24, 2005. Because Colonel Dubsky filed his complaint over one month after the statute of limitations had expired, the Court is without jurisdiction and the complaint must be dismissed.

Colonel Dubsky raises three arguments to explain why his complaint is timely. First, Colonel Dubsky asserts that, because he was not afforded a hearing regarding the decision to release him from active duty, the AFBCMR's decision constitutes the first hearing regarding those decisions, and therefore the appeal of that decision is timely. Colonel Dubsky relies on the "first competent board rule" to suggest that his claims did not accrue until the AFBCMR issued a ruling. See Chambers v. United States, 417 F.3d 1218 (Fed. Cir. 2005). However, Chambers is a retirement disability case, and therefore subject to a very different analysis than the Military Pay Act claims advanced by Colonel Dubsky. The Federal Circuit has noted that the different treatment of these two types of cases stems from their respective money mandating sources. Id. at 1224. In Military Pay

---

[2] February 15, 1999 is the latest possible date on which Colonel Dubsky's claims began to accrue. Although the Court will use that date throughout this opinion, the Court finds that date only applies to Colonel Dubsky's claim of improper release from active duty because of his wrist injury. His claims regarding incremental orders began to accrue on July 29, 1998, the last time he claims he did not serve because of an improper incremental order, and his claims regarding recovery from thyroid surgery began to accrue on February 3, 1996, the date on which he was first released from active duty while his condition was unresolved.

Act cases, an administrative appeal is only a permissive remedy, and not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge. Id. Accordingly, in Military Pay Act cases, appeals filed with an administrative board do not toll the statute of limitations and the "first competent board rule" does not apply. In contrast, disability retirement cases are governed by 10 U.S.C § 1201, under which no cause of action arises until a proper board has acted or declined to act. Id.

To the extent that Colonel Dubsky is trying to assert that the decision by the AFBCMR creates its own substantive cause of action, Martinez is contrary to this view. In that case, the Federal Circuit explained:

> At the time of his separation, [plaintiff] had a right to sue for improper discharge and to obtain money if he could prove his case. At the time the correction board acted, he still had that right. The injury caused by the separation was not altered or exacerbated by the correction board action. The only thing that was different was that he had exercised the optional remedy provided . . . , which offered him an alternative means of obtaining relief. Because [plaintiff] is entitled to monetary relief only if he can show that he was improperly separated, a suit in the Court of Federal Claims that purports to challenge the correction board decision is in essence an action challenging his separation.

Martinez, 333 F.3d at 1314. Here, Colonel Dubsky had a right to sue for improper discharge on February 15, 1999. The injury caused by the allegedly improper removal from active duty orders was not caused or exacerbated by the decision of the AFBCMR. The AFBCMR offered Colonel Dubsky an alternative means of obtaining the relief he seeks but the decision of the AFBCMR does not create a new cause of action or act to extend the statute of limitations on the underlying claim.

Colonel Dubsky also argues that under 10 U.S.C. § 1214, the statute of limitations did not begin to toll until he was afforded a hearing. This statute provides that "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." 10 U.S.C. § 1214 is inapplicable here because Colonel Dubsky does not allege that he was retired or separated because of a physical disability. To the contrary, the Air Force maintained Colonel Dubsky on active duty medical continuation tours until determining that he was no longer disabled and qualified for medical continuation.

Next, Colonel Dubsky argues that, even if appeal to the AFBCMR was a permissive appeal, a request to a military command to change its decision is a non-permissive appeal and therefore the statute of limitations did not begin to run until March 24, 1999, when Colonel Dubsky and his doctor asked the command to reconsider his release from active duty. Colonel Dubsky provides no citation for his assertion that a

request to the command is a non-permissive appeal, but argues that "[t]he only way a [service member] can get the command to change a decision is to appeal that decision through the chain of command." (Pl.'s Mot. J. Admin. R. 14.)

The Court does not agree with Colonel Dubsky's analysis. As noted above, the statute of limitations begins to run as soon as all events have occurred that are necessary for a plaintiff to bring his suit. A permissive appeal is an avenue available to a plaintiff, but not required to be taken before seeking a remedy in this Court. While it may be true that, according to Air Force policy or regulations, Colonel Dubsky was required to appeal his decision through the chain of command before going to the AFBCMR, the jurisdiction of this Court has no such requirement. Colonel Dubsky was entitled to sue for improper release from active duty on February 15, 1999, the date he was released from active duty. Accordingly, that is the date the statute of limitations began to run and any appeal undertaken by Colonel Dubsky before coming to this Court was a permissive appeal.

Finally, Colonel Dubsky argues that the statute of limitations, at least with regard to his non-continuous orders, did not begin to run until he discovered that the issuance of incremental orders was prohibited. Colonel Dubsky bases his argument on the legal principle that "accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Martinez, 333 F.3d at 1319. Colonel Dubsky argues that he was unaware of the restrictions against the incremental orders and had no reason to suspect that his orders were not perfectly legal. However, Colonel Dubsky's accrual suspension argument is without merit because at all times he possessed the factual information required to bring his claim in this Court, even if he lacked the awareness of his legal right to do so. See Young v. United States, 529 F.3d 1380, 1385 (Fed. Cir. 2008) (citing United States v. Kubrick, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.")); see also Catawba Indian Tribe v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (declining to extend the statute of limitations where "all the relevant facts were known . . . [i]t was the meaning of the law that was misunderstood."). At the time that the Air Force issued a non-continuous duty order, Colonel Dubsky possessed all the facts he needed to bring his claim, even if he lacked the legal wherewithal to do so.

Colonel Dubsky also appears to argue that equity would require a tolling of the statute of limitations. In support of this position, Colonel Dubsky notes that it was immensely difficult for his attorney to discover the Air Force's prohibition on incremental orders and that the United States should not now be able to shield itself from its wrongful behavior. However, to the extent Martinez may have left open the possibility for equitable tolling of the statute of limitations, the Supreme Court has since precluded equitable tolling of the limitation period provided by 28 U.S.C. § 2501. John

R. Sand & Gravel Co., 552 U.S. at 133-34 (2008).  Waivers of sovereign immunity must be strictly construed, and the Court cannot extend its jurisdiction without explicit consent by Congress to do so.

## Conclusion

Colonel Dubsky filed his complaint more than six years after all the events occurred that were necessary for him to bring this suit.  Accordingly, this Court is without jurisdiction.  Defendant's motion to dismiss is GRANTED and the complaint is dismissed without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge